Case number 13-0597. Ford Motor Company v. City of Chicago Department of Finance. The lawyers who are going to argue, please approach the bench and introduce yourself. Good morning. Stephen Collins for the City of Chicago Department of Finance. Michael Bowen for Ford Motor Company. Let's proceed. Mr. Collins, you're going to reserve some time for rebuttal. That's right, Your Honor. Are you going to reserve some time for rebuttal? Yes. Yes, please. May it please the Court. The vehicle fuel tax is due on fuel used in the city that is purchased in a sale at retail. A sale at retail is a sale to a person for that person's use and not for resale to another. Use includes putting fuel into the supply tank of a vehicle. But Ford also charged the dealership, did it not? It did separately charge the dealership for fuel, but that does not mean that Ford bought the fuel for resale. A sale to any person is either for that person's... So what did Ford do with the... How did the dealership pay for it then? I mean, if it's not resale, what did they do? There was a separate charge for the fuel, and presumably dealerships paid that charge. But that does not mean that Ford purchased this fuel for resale, which is what Ford would have to show in order to establish that it did not purchase the fuel in a sale at retail. Ford purchased the fuel to use it, namely to put it into the supply tanks of its vehicles. And indeed, putting fuel into the supply tank of a vehicle is the quintessential taxable event. It is the only type of use that is specifically identified in the ordinance's definitions of use. Moreover, under the ordinance, use in the city happens only in the place where fuel is put into the vehicle that will consume it. What is the significance of Ford being given this distributorship, or fitting under that rubric? Are you referring to the registration as a distributor? Yes, as a distributor. Who grants anyone the right to registration as a distributor, and how does that impact this case? The city granted the registration, but with respect to the fuel at issue, the registration has no significance. All right, and why is that? What does this distributor, what is it called, a license or a permit? I believe it's a registration. Registration, yeah. What does that give them the right to? Outside of the fuel at issue in this case, I'm honestly not sure, Your Honor. What's necessary to examine, though, is how Ford used the fuel at issue in this case. Even Ford agrees that it's status as a registered distributor of fuel. Well, if they were a distributor, did they collect the tax from all of these dealerships? No, there's no... So aren't they supposed to do that? If Ford acted as a distributor of fuel in this case, which our position is that they did not. Okay, but if they did, and they're claiming to be that, aren't they? Yes, they are. So aren't they required, as a distributor who sells vehicle fuel directly to a purchaser, aren't they required to collect the tax from the purchaser or the user? I believe Ford characterizes its dealerships as retail dealers of fuel, but in either event, yes, that Ford would be obligated under the ordinances collection and remittance provisions to collect the tax from the dealerships and in turn remit payment of the tax to the city. And Ford does not do any of that. And Ford actually argues that all of the fuel that remains in its vehicles that are sent to dealerships is exempt. And that's plainly... Even the amount of fuel that they use by moving the cars? I'm sorry, Your Honor? Even the fuel that they use in the plant when they move the cars, they argue that it's not taxed? No, Your Honor. Ford concedes the tax on the fuel that is actually consumed on plant grounds, which amounts to about 2%. 2%? 2% of the fuel. But they charge the dealership for the whole 10 gallons? That is correct. At least according to the only invoice in the record, that's what the charge was. But under the ordinance, taxation does not depend on where consumption of fuel takes place. It depends on when it's placed into the tanks? Precisely, Your Honor. That is why when a person goes to a gas station in Chicago and then drives outside of the city, it does not matter for the purposes of taxation whether some of the fuel is consumed outside of the city and some within. All of the tax is due on that fuel when the fuel is put into the tank. Moreover, it does not matter if a person is reimbursed for fuel after putting fuel into the tank. So, for example, if I take my friend's car to the gas station and fill up the tank, and my friend subsequently pays me for the gas that I put into the tank, it's still a sale at retail that I engaged in, and the tax is due on all of that fuel. I'd like to address a couple of the exemptions that Ford relies on. One is as a distributor of fuel to a retail dealer outside of the city. To be clear, this is not the transaction that we are looking to tax. The taxable event is what happened at the plant when Ford put fuel into the supply tanks of its vehicles, and anything that happened to the fuel after that does not affect taxation. Moreover, Ford did not act as a distributor with respect to this fuel, and its retail dealers are not. They are retail dealers of automobiles. They are not dealers of fuel. Second, Ford relies on the exemption. Well, I have to go back to this question. Collins? Mr. Collins? Yes. Yes, Mr. Collins. Explain to me again, why were they given this registration? Because a distributor is defined as someone who sells vehicle fuel directly to a purchaser or user for delivery in Chicago and not for resale. And they're supposed to collect the tax from the purchaser or user. I'm missing something here about this notion of what a distributor is. Why were they given the registration, but they're not really a distributor? Your Honor, I wish I could explain why Ford was given the registration as a distributor. Unfortunately, I just don't know. But you say it doesn't make any difference. That's correct. And Ford agrees that you have to look at how fuel is actually used, because Ford agrees that the fuel that's consumed on plant grounds is indeed taxable, regardless of their registration as a distributor. So the key is to look at how the fuel issue is being used. But your argument is that it's used the moment it's purchased. Correct. The key event, Your Honor, is the moment the fuel is put into the tank of the vehicle. That is the only taxable event. And whatever happens downstream from that, reimbursements or movement of the car outside the city, that does not affect taxation. And we're not even interested in taxing those events. Another exemption that Ford relies on is use for a purpose other than propulsion or operation of a vehicle. Ford interprets this exemption to apply when Ford is not the person to consume the fuel. But plainly, this exemption does not depend on the purchaser being the same person to consume the fuel. A person is deemed to use all of the fuel when fuel is put into the supply tank of a vehicle. And for that reason, this exemption does not apply to the fuel at issue. Ford has relied on a couple other – has made a couple of other arguments for why taxation should not happen here. One is for an exemption for when taxation would violate the Constitution. Another is that Ford relies on state law. Unless the Court has any questions on these arguments, we rest on our breeze. Thank you. Good morning. Michael Bowen for the FLE Ford Motor Company. Ford has made several arguments during the course of this litigation. I'd like to focus on one. I'd like to focus on what it got us here. And that's the argument directly on the statute. I'm happy to talk about the distributor issue. Ford would be more than happy to know they're not required to be registered since it doesn't matter apparently. But what I'd like to focus on is what really matters. And that's the definition here of the definition of sale at retail. Sale at retail, which is key to the imposition of the vehicle fuel tax under 3-52-020, is defined as any sale to a person for that person's use or consumption and not for resale to another. So from the standpoint of taxation, we have two opposite ends of the spectrum. Well, what does use mean? That's my point. I'm going to get there, Your Honor. I promise. So you have use or consumption at one end. That's a sale at retail definitely. You're the end user. And then you have sale for resale, which is the other end of the spectrum, obviously exempt from tax. That's the whole point. You're not selling to an end user. The issue that we have here in the definition in the imposition statute is that use is defined by terms of ownership. The city is looking to the definition of the term use and saying, no, no, no, all we care about is when you put the fuel in the tank. That's the taxable event. But that's not the definition of use. Use is the exercise of any right to or power over vehicle fuel incident to the ownership thereof, including but not limited to putting the fuel in the supply tank of a vehicle. So it's actually much, much broader. So any use could happen. I don't even have to put it in the tank. By definition, purchase is a use under the definition of use. Any exercise of ownership. Well, what about everybody else that goes to the pump and buys gas? All right. Let's forget about Ford, which I thought, you know, traditionally was in the business of manufacturing motor vehicles. But putting that aside, when I go to purchase gas at the Shell station or BP or whatever, when I put that gas into my car's tank, am I paying for the tax at that point? Yes, Your Honor. And is it because I put it into the tank? Or is it for some other reason? I'm sorry to interrupt you. Yes, under the definition of use. That's why that was drafted. This was drafted for that reason. Okay. So why isn't Ford held to the same standards as everyone else? Whether I use it or not. Let's say I let it sit in my garage for five years and never use it. I've already paid that tax. But why should Ford have some other benefit that the individual doesn't have? Excellent question. But this is a very unique set of circumstances. What we have here, again, is use, which we're talking about now, putting the fuel in the tank. But then you're ignoring the resale language. How do you get to a resale? How can I resell something if I don't own it or otherwise store it before I can resell it? As I see it, Your Honor, this is – Well, then did you pay all the taxes or have those been – have they escaped the great arm of the tax? Indeed. I believe they have. I mean, is that what we're talking about? Yes. So you're going to be reselling, but you're not going to be paying the tax that you're supposed to be paying. Supposed to be paying. Well, you're selling it at retail, right? No. I thought that's why you get the benefit. We're selling for resale. For resale. Not retail. Okay. Resale. But you're also reselling the total of what you use. Reselling what, Your Honor? You're reselling what you also used. No, Your Honor. He charges the dealership the whole 10 gallons. So you're even sticking it to the dealership of stuff that you used. Your Honor, in the exhibit that's attached to the amended joint stipulation of fact, there's many uses that Ford engaged in with respect to the fuel. One of those uses that I believe you're getting to is loading and unloading the vehicles onto the trucks. That is a specific category that's part and parcel of the 2 percent that we've already paid tax on. The only category we're talking about is that which remained of the tanks that was exported and resold to dealers. But you resell 10 gallons, the whole 10 gallons, not 8 gallons. I think 10 gallons is a bit of a misnomer. I think there was no evidence in the record that there was only ever 10 gallons in every single tank of every vehicle sold. And actually, the invoices that were attached to Dennis Curley's affidavit, there should have been several invoices that were attached. There's a myriad of different prices for gas and different gallons of gas that Ford puts in it. It's whatever's in it when they sell it that shows up on the invoices. Well, getting back to my question, who's paying for the tax then? Your Honor, there are two different transactions that Ford is involved in. I don't know who ultimately is paying the tax. We buy the fuel from BP Amico. We're both registered as distributors, so there's an exemption for that. And when we put the fuel in the tank, that's not a taxable event, again, because we are reselling. And as a result, that's not a taxable event. Then we're out. The vehicle's already been purchased by the dealer with the fuel in it. If there's a later taxable event down the road, it's because the dealer turned around and sold that fuel to you or I when we bought a Ford Taurus. Yeah, but when you sold that, aren't you saying that you sold that fuel to the dealer? We resold. You resold it? It's a non-event. It's a non-taxable event. You're saying it's a non-event? It's not a retail sale. Okay, let's just do. It's not a retail sale, Your Honor, because they are not the end user. It's a sale for resale. So, again, we have use, which you have to have ownership in order to be able to use it, and you have resale, which you have to have ownership in order to be able to resell it. So you have two different conflicting positions in the sale at retail requirement. The ALJ in this case looked to use and said, Ford, you put it in the tank, you used it. I don't get to read any further in the statute that provides for the sale at retail. How are we reviewing his findings? Because we're certainly not reviewing the circuit court's decision, are we? Correct. It's an odd procedural circumstance in the sense that I'm asking you to reverse the ALJ, even though the city is the appellant in this case in light of the circuit court's decision. Well, we're not reviewing the circuit court's decision. We're reviewing the ALJ's decision. What is the standard of review for us to look at the ALJ's decision? It's de novo. And the city has conceded that. Again, what they concede is nothing that we're bound by. Yes, Your Honor. My question is, is this really de novo or is it clearly erroneous? Or do we give certain deference to the ALJ's determination as someone interpreting a statute? Ford's position, Your Honor, is it's de novo. It's a question of law. You review the ALJ's interpretation of the statute as de novo. It's a question of law. So, again, Your Honor, the sale at retail requirement purports to put use against resale. And since you can't have ownership without using it, and I can't resell it unless I own it, you have two conflicting different interpretations. The ALJ never got there because it looked at use and that was enough. Our position is I can't resell it if I don't own it. So what you have to look at the sale at retail requirement from is the lens of purpose. What was Ford's purpose in purchasing the fuel from BP Amico, the millions upon millions of gallons that represent the 98% of the vehicle fuel at issue here? Let me ask you a question. If Ford puts gas in vehicles that are used by its executives in vehicles, is that taxable? Yes, Ford has paid tax on those amounts. For example, Your Honor, when Ford put fuel into vehicles at the plant to drive around, that's part of the 2% we've already paid tax on. Testing vehicles at the plant are being paid tax on. So you're talking about a narrow situation. A very narrow situation. But a lot of gas. We're talking about millions upon millions of gallons. 98% of what we purchase we resell. Is there any way to really police that or keep control of that? In what sense, Your Honor, police it? In the sense of knowing what's for resale and what's not for resale. We have. And the exhibit that we've attached to the joint tax stipulation breaks it down by category, exactly how many gallons are used for all these purposes. Employee use, loading and unloading, testing. Let me ask you this question. When you argued that you acted as a distributor, you did argue that, didn't you? Yes, Your Honor. All right. In that argument, your contention was that you sell vehicle fuel to a retail dealer for resale in the city. Is it true? True. All right. How is an auto dealership a retail dealer? Explain that to me. Because they sell vehicle fuel. No, the auto dealerships, you're saying that their business is to sell fuel? I'm not saying it's their business. Nor is it saying in the definition that it has to be their primary business. The argument the city makes is they're selling vehicles. Well, as you said, Your Honor, Ford manufactures cars, but we also apparently must be selling fuel too. All right. So are you arguing then that these auto dealerships are actually retail dealers for? Under the definition, I believe. Under the definition of what a retail dealer is. For resale? Correct. Because the dealers themselves aren't using it either, right? We have the loading and unloading of the fuels being taxed already. That's not here. That's not what we're talking about. What we're talking about is the fuel that's in the cars. When you or I go to the dealership, the dealership's not using that fuel. You or I go. That makes them a retail dealer. Under the definition of what a retail dealer is. Well, what definition are you referencing? 3-5-2. Yeah, read it to me. Okay, sure. It means any person who's engaged in the business of selling vehicle fuel in the city to a purchaser for the purchaser's use or consumption and not for resale in any form. So that's what you're relying on. You're saying that all automobile dealerships that you're selling your cars to are engaged in the business of selling vehicle fuel in the city to a purchaser for the purchaser's use or consumption. You or I, when we buy a Ford Taurus. Correct. And it's not exclusive. It doesn't say it needs to be their only business or primary business. Again, like your point, Ford manufactures cars. But apparently we're being held to be in the business of retailing vehicle fuel as well for the purposes of fuel tax. So a dealership out of state is going to send the tax to the city of Chicago when they sell the car. That's an exempt. That's also exempt. It's exempt. Yeah. So all the cars you make, they won't pay the tax even though you fill them up in the city of Chicago. That's by the code, though. That's the way the code is drafted. So when I buy a Ford and there's gas in the Ford, no one pays tax on that gas. Is that what you're telling us? I don't know how the dealerships charge their customers like you and I, Your Honor. I've never seen anybody charge for gas. Have you? No. Are there any, like, tax ramifications to auto dealerships not listing anything about what they really do? In other words, we all know that they sell vehicles, but it might be a surprise to many, even the U.S. government, that they're actually retail sellers of fuel. I agree. So are there any significant ramifications to that? Certainly. Don't corporations have to indicate what it is they actually do? Sure. And you're saying that they routinely and regularly, and this is really what they do, is that they're selling fuel to consumers when they sell cars to them as well. I can't speak for them, but, yeah. And you think that's what the ordinance was designed to include? Designed to exclude. The city of Chicago? Yeah. No, it includes dealers. They're people that are actually selling fuel. Sure. And you don't have any cases that suggest that. No, but I don't, but there's no case at all to any of this. This is a unique circumstance where you actually have a manufacturer of motor vehicles in the city of Chicago who does this. Yes. Again, I view it as akin to a grocery store. A grocery store doesn't go out and buy cookies from a wholesaler or distributor and put it on a shelf for the purpose of leaving it to sit on a shelf. They buy the cookies and the like to resell to end consumers, as is here. Ford purchases fuel from BP Amico not to let it sit in cars and have it deemed a taxable use because we put it in the tank. It's to resell the fuel with the car, and that's what we've done here. It's the exact same circumstance. It's the exact same analogy. I can't resell what I don't own. If somebody else were purchasing this for sale, wouldn't they be paying the tax? Purchases what for sale? The fuel. Sure, if they're an end user. Yeah, but I've never seen a sale of a car for the charge for gasoline. Okay. Have you? No, I have. I don't buy a lot. I don't think there is any. Okay. So if there isn't any, how can you really maintain your position? If no one is purchasing this fuel that buys the car, doesn't your whole… No, it doesn't, Your Honor, because how do I get – I mean, how does that combat the argument that Ford is making the sale for resale when it sells to dealers? You're talking about a transaction that's down the road when you arrive by the Taurus from the dealership. But you're saying that we're all paying for that. That doesn't matter. The point is that the city is saying we're liable for tax and we put the fuel in the tank. Yes. That's a taxable event. And the argument that Ford is making, not down the road, is right then, that that can't be a taxable event. Why not? Because we are reselling the fuel to the dealership. We can't resell it unless we own it. And when you resell it, is the dealership paying all the taxes too? Is the person who buys the car paying for the tax? I don't – Your Honor, I'm not aware whether the buyer or not. Would the purpose of the statute be wholly negated if we take your argument to its logical conclusion? How is it negated? No one is paying tax. That's the purpose of the statute. My understanding of the statute is it's only supposed to tax sales at retail and not sales for resale. And if, under the documentation which we provided to the court that's in the factual record, we are making a resale sale of fuel, then that's non-taxable. Does the record show how much you charged each individual dealership for the fuel that you sold them? Correct. So if we take your position then from that point forward, maybe people will start charging for the gas. Or maybe the city would go after the folks who should be liable for the tax. Our point is, is the transaction that they're seeking to tax in this case is non-taxable. Well, the other thing I want to ask you is, are you a distributor? We are registered as a distributor, and we believe we fall under the definition of what a distributor is. And aren't the distributors the ones that are supposed to be collecting the tax? If they're selling to an end-user. Well, where's end-user coming from? Well, that's the whole concept of the entire taxation scheme. Is there an end-user language in the statute? No, it's a tax term in the sense that it's user consumption.  If you're selling it to somebody. An end-user is something you've come up with and added to the statute, isn't it? No, user consumption is the definition. Yeah, but end-user. I'm talking about the end-user. Yes. All right. Well, if you're reselling it, you're not an end-user. If you're reselling it, it's exempt. If you're an end-user, like you or I buying something from the grocery store, it's taxable. It's the same concept. Ford is putting the fuel into the tanks to resell it. It's not happenstance that we sell vehicles. The purpose of putting the gasoline in the vehicles is to resell it. Well, isn't it to really move those cars off the Ford plant so that they can go to a dealership and then be sold to someone else? Well, actually, in the stipulation, the parties have agreed that, in paragraph 6, that the gas is put into the tanks at the convenience of the dealerships and their customers. It's not for Ford. It's just meant for the dealerships. They have to have something in the tank in order to be able to drive the cars around their lot, I guess, or have you or I test drive it to where it's going to go to. Thank you. Just a few points, Your Honor. We understand Ford not to be relying on its status as a registered distributor of fuel for the purposes of taxation, so we don't address that point any further. I'd like to address this concept of end use. End use is not a term that's used in the ordinance. Putting fuel into the tank of a vehicle that will consume the fuel is a quintessential taxable event, and that is what the city is looking to tax in this instance. Ford bought this fuel to put it into the tanks of its newly manufactured vehicles. It follows that it did not purchase this fuel at resale. And I'd like to contrast what Ford does with what a gas station does. A gas station undoubtedly purchases fuel for resale. When it exercises control over fuel by holding it in a storage tank, the gas station didn't acquire that fuel for the purpose of just holding it there in that tank. The gas station bought it to resell it to its customers, who will in turn put the fuel into the supply tanks of their vehicles. And the tax is due at that moment when that event takes place. Everything that happens downstream in terms of Ford being reimbursed by dealerships for the fuel or some automobiles traveling outside of the city to dealerships outside of the city does not affect whether the tax applies at all. And there's no need to compare fuel to groceries or other kinds of goods because the ordinance is very clear that use happens when fuel is put into the supply tank of a vehicle. For these reasons, the judgment of the circuit court should be reversed. Thank you. Thank you. Okay, you've given us an interesting case, and we'll take it under advisement. Call the next case.